**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION**

**LINDA KRUPP
individually and on behalf
of all others similarly situated,
        Plaintiff,**

**Case No. 14-CV-950**

**v.**

**IMPACT ACQUISITIONS LLC
d/b/a KUBICHECK OFFICE PRODUCTS,
        Defendant.**

**PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO STRIKE,
FOR PROTECTIVE ORDER, AND FOR SANCTIONS**

## INTRODUCTION

Defendant's pending motion hinges on the false premise that Plaintiff's advertising letter amounts to judicial "notice," thereby triggering as a prerequisite Defendant's approval of its contents and a finding by the Court that Plaintiff is similarly situated to the putative collective action members. However, the Supreme Court of the United States has clearly stated that advertising letters do not equate to such "notice." *See Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 171 (1989). Rather, advertising letters are constitutionally protected commercial speech. *See Shapero v. Kentucky Bar Ass'n*, 486 U.S. 466 (1988). As such, the Court should only restrict communication based on a "clear record and specific findings that reflect the weighing of a need for limitation and the potential interference with the rights of the parties." *Gulf Oil v. Bernard*, 452 U.S. 89, 101 (1981). No such record is present

1

here: Plaintiff's advertising letter is informative, factual, and compliant with all pertinent Wisconsin Rules of Professional Conduct. In addition, in the context of FLSA collective actions, restricting non-misleading communications would interfere with the statutory rights of putative opt-in class members whose statutes of limitations for FLSA claims continue to run until they consent to join an action asserting those claims. For these reasons, the Court should therefore deny Defendant's motion in its entirety.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

Plaintiff Linda Krupp ("Krupp") worked as a Digital Services Technician for Impact Acquisitions LLC d/b/a Kubicheck Office Products ("Defendant") during the relevant statutory period. On August 5, 2014, Krupp brought this class and collective and class action against Defendant pursuant to Federal Rules of Civil Procedure 23 and the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b). (*See generally* Compl., ECF No. 1).[1] Krupp alleges that Defendant failed to pay her and all similarly situated Digital Service Technicians employed by Impact overtime premium compensation for all hours worked over 40 in a workweek. (Compl., ECF No. 1, at ¶¶ 1, 9-10).

Cognizant that, under the FLSA, putative collective action members' statutes of limitation does not stop until they file a written consent form to "opt in" to the action, Plaintiff's Counsel has continued to investigate Defendant's compensation

---

[1] After successfully defending against Defendant's motion to dismiss, Plaintiff's Amended Compliant was entered on August 25, 2015. (ECF No. 21.)

2

policies and practices since filing the Complaint. (Johnson Decl., ECF No. 39, at ¶ 2; 29 U.S.C. § 216(b)). As part of that investigation, Plaintiff's counsel sent letters to a list of employee names obtained from Krupp, which indicated employees' "Level" and "Start Date." (Exhibit A to Johnson Decl., ECF No. 39-1; Johnson Decl., ECF No. 39, at ¶ 5.) The names Greg Wassell and Robert Leodoro appeared on that list, indicating that they worked for Impact as Digital Service Technicians I and II, respectively. (Exhibit A to Johnson Decl., ECF No. 39-1.) Plaintiff's Counsel reasonably believed that these individuals were putative collective action members, given that their names appeared on a list of Digital Service Technicians purportedly employed by Defendant and obtained from Plaintiff. (Johnson Decl., ECF No. 39, at ¶ 4.)

Based on a Fed. R. Civ. P. 30(b)(6) deposition on February 15, 2016, Plaintiff's Counsel learned that Defendant Impact Acquisitions LLC does not operate Impact Networking as alleged in the Complaint. (Johnson Decl., ECF No. 39, at ¶ 8.) Rather three entities – Impact Acquisitions LLC, Impact Networking LLC, and Impact Indiana, LLC – all do business as "Impact Networking," employee Digital Service Technicians, and respectively operate out of Wisconsin, Illinois, and Indiana. (Johnson Decl., ECF No. 39, at ¶ 8.) Greg Wassell and Robert Leodoro were employed by Impact Networking LLC – an entity which is not a named Defendant at this time but which employs Digital Service Technicians in Illinois and set the compensation policies applicable to Digital Service Technicians employed by Impact Acquisitions, LLC. (Johnson Decl., ECF No. 39, at ¶ 9.) While Defendant states to

3

the Court that Greg Wassell and Robert Leodoro were not employed by Defendant (Def. Br., ECF No. 36, at 1, 2, 4, 6, 9), Defendant failed to disclose that they were employed by Impact Networking, LLC, a related entity also doing business as "Impact Networking". (Johnson Decl., ECF No. 39, at ¶ 9.) Moreover, as a result of Defendant's 30(b)(6) deposition testimony on February 15, 2016, Plaintiff intends to file a Motion to Amend her Complaint in the near future to add additional named defendants, including Impact Networking LLC and Impact Indiana LLC. (Johnson Decl., ECF No. 39, at ¶ 10.) Finally, Krupp herself believed that Greg Wassell and Robert Leodoro worked for Defendant and Krupp was unaware that they worked for Impact Networking LLC, rather than Impact Acquisitions, LLC. (Krupp Decl., ECF No. 40, at ¶ 3.)

On January 25, 2016, to further investigate and prepare for Plaintiff's upcoming motion for conditional certification, Plaintiff's Counsel mailed an advertisement letter to a number of the Digital Service Technicians on the list of names, including Greg Wassell and Robert Leodoro. (Johnson Decl., ECF No. 39, at ¶ 5; Ex. B to Johnson Decl., ECF No. 39-2.) The letter was marked "**ADVERTISING MATERIAL**" (emphasis in original) as required by SCR 20:7.3(e) of the Wisconsin Rules of Professional Conduct. (Ex. B to Johnson Decl., ECF No. 39-2.) Plaintiff's Counsel also sent the letter to the Office of Lawyer Regulation as required by SCR 20:7.3(e). (Johnson Decl., ECF No. 39, at ¶ 6; Ex. B to Johnson Decl., ECF No. 39-2.) The letter generally informed recipients that Plaintiff's Counsel represents Krupp in a lawsuit she has brought against Impact on behalf of

4

other Digital Services Technicians for overtime wages. (Ex. B to Johnson Decl., ECF No. 39-2.) As detailed below, the letter carefully states that it was Plaintiff's Counsel <u>understanding</u> that the recipients were employed by Impact as a Digital Service Technicians, that the recipients <u>may</u> have been improperly denied overtime wages, and that the recipients <u>may have</u> a claim for unpaid overtime wages. (Ex. B to Johnson Decl., ECF No. 39-2.) The advertising letter does not state that the recipients have a claim or are entitled to any wages or other relief. (Ex. B to Johnson Decl., ECF No. 39-2.)

In response to the January 25, 2016 mailing, Plaintiff has received a consent form from a Digital Services Technician, Mr. Wendell Walton. (ECF No. 37.) Mr. Walton was identified on the list provided by Krupp as a Digital Service Technician. (Exhibit A to Johnson Decl., ECF No. 39-1.) Based on the information gathered from Krupp, Mr. Walton, through written discovery, and the FED.R.CIV.P. 30(b)(6) deposition testimony, Plaintiffs' Counsel will bring a motion for conditional certification and judicial notice by March 22, 2016 (ECF No. 32; Johnson Decl., ECF No. 39, at ¶ 11-.)

## ARGUMENT

Defendant's motion has no basis in law or fact. The Supreme Court has twice rejected the blanket prohibitions on the type of communications between attorneys and potential clients that Defendant seeks with its motion. *See Gulf Oil*, 452 U.S. at 101; *Shapero*, 486 U.S. at 472. Defendant's mischaracterization of Plaintiff's advertisement letter as "notice" cannot defeat Plaintiff's constitutionally protected

5

right to engage in ethical solicitation of potential clients. In addition, Plaintiff's ethical solicitation of potential clients cannot be hindered where it is truthful and is not misleading. For those reasons, the Court should deny Defendant's motion.

## I.    Plaintiffs' advertising letter is not judicial notice.

Defendant mischaracterizes Plaintiffs' advertisement letters as "notice" to fabricate support for its argument that the alleged "notice" was improper and misleading.[2] However, Courts have repeatedly distinguished advertisement letters from notice. *See Hoffman-La Roche*, 493 U.S. at 174 ("court intervention in the notice process for case management purposes is distinguishable in form and function from the solicitation of claims."); *see also Kalish v. High Tech Inst.*, 2005 WL 1073645, at *4 (D. Minn. Apr. 22, 2005) (rejecting defendant's argument that advertisement letter notifying potential class members of the action was "notice," where the letter clearly states that it is an advertisement and does not contain anywhere near the detail typically included in a judicial notice); *Monroe v. United Air Lines, Inc.*, 90 F.R.D. 638, 640, n. 4 (N.D. Ill. 1981) ("[N]otice to class members is hardly synonymous with solicitation.").

The Supreme Court drew a clear line between advertisement letters and notice in *Hoffmann-La Roche*. In that case, plaintiffs sent six hundred pre-certification advertisement letters to employees identified as potential members of the putative class resulting in four hundred consents. 493 U.S. at 168. The letter informed recipients about the collective action and invited them to join by

---

[2] See infra Sections III, IV.

6

completing an enclosed consent form. *Id*. Far from conflating plaintiffs' advertising letter with judicial notice, the Supreme Court distinguished between the two in finding that court-authorized notice should still be sent, and in that case could counter any such potentially misleading communication. *Id*. at 171, n. 2. That is, the Court deemed judicial notice the *remedy* for conflicts between the parties regarding communications (such as advertising letters) with potential plaintiffs in FLSA actions. *See also Rubery v. Buth-Na-Bodhaige, Inc.*, 514 F. Supp. 2d 431, 434 (W.D.N.Y. 2007).

Pursuant to *Hoffman-La Roche*, the parties here will have the opportunity to present conflicting views on the form and content of the court approved notice when Plaintiff files a motion for conditional certification and judicial notice. As a result, some of the concerns Defendant raises in its brief will be addressed in Plaintiff's proposed notice to the putative collective action members. The reality is that the advertisement letters sent by Plaintiff's Counsel do not function as court approved notice and were never intended to function as or replace court approved notice to the entire putative collective class. Rather, the communications were simply constitutionally protected advertisement letters.

## II.    Plaintiff's advertising letter is constitutionally protected free speech because it is truthful and non-deceptive.

Lawyer advertising in the form of Plaintiff's letter is constitutionally protected commercial speech. *Shapero*, 486 U.S. at 472 (citing *Bates v. State Bar of Ariz.*, 433 U.S. 350 (1977)). It "is well-settled that attorney advertisements such as [a letter marked "attorney advertising" and enclosing a consent form] are protected

7

by the First Amendment, so long as they are 'not false or deceptive and [do] not concern unlawful activities.'" *Rubery*, 514 F. Supp. 2d at 434 (citing *Shapero*, 486 U.S. at 472). In *Shapero*, the Court held that states may not categorically prohibit lawyers from advertising legal services by sending targeted, "truthful and non-deceptive" letters to potential clients. 486 U.S. at 466. The Court found that such advertising is commercial speech protected by the First Amendment, which "may be restricted only in the service of a substantial government interest, and only through means that directly advance that interest." *Id.* at 472 (quoting *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626 (1985)). Thus, truthful attorney advertising related to lawful activities is entitled to the protection of the First Amendment, while inherently or demonstrably misleading speech may be prohibited. *In re R.M.J.*, 455 U.S. 191 (1982).

### A. Plaintiff's advertising letter contains statements which can only be read to be truthful and not deceptive.

Here, Plaintiff's Counsel carefully drafted an informative advertising letter that was conspicuously labeled "**ADVERTISING MATERIAL**." (Ex. B to Johnson Decl., ECF No. 39-2.) (emphasis in original). The advertising letter is on "Hawks Quindel, S.C." letterhead, does not have the appearance of court-authorized notice or a pleading, and does not suggest that the Court has certified a class or weighed in on the merits of the case. (Ex. B to Johnson Decl., ECF No. 39-2.) Further, each statement in the letter is unassailably true:

- Our law firm represents Plaintiff Linda Krupp in a federal lawsuit for unpaid overtime wages against Impact Acquisitions, LLC.

8

- The lawsuit <u>alleges</u> that Ms. Krupp and other Digital Service Technicians at Impact were paid an annual salary regardless of their hours of work.

- As a result, in workweeks where Digital Service Technicians worked more than 40 hours, they <u>may have been</u> improperly denied overtime wages under the Fair Labor Standards Act ("FLSA").

- It is <u>our understanding</u> that you worked as a Digital Services Technician within the past three years and <u>may have</u> a claim for unpaid overtime wages under the FLSA.

- If you would like to join the lawsuit, please fill out and return the enclosed Consent Form.

- Once we receive the form we will file it with the Court and your FLSA overtime claims will be asserted in this lawsuit.

- Please keep in mind that your claims for unpaid wages under the FLSA can only go back two to three years from the date that your Consent Form is filed with the Court.

- As a result, each day that passes <u>may</u> decrease any <u>potential</u> overtime damages that you <u>may be</u> owed.

- Please feel free to contact our office at (414) 271-8650 with any questions or concerns.

- We look forward to hearing from you.

  Ex. B to Johnson Decl., ECF No. 39-2.) (emphasis added.)

Notably, the use of the word "alleges" makes it clear that Plaintiff's claims have not yet been proven. Similarly, the word "may"—with respect to having a claim, having been denied overtime, and being owed overtime—indicates that recovery of wages is not a foregone conclusion. The letter does not coerce or demand that recipients complete the enclosed consent form, but invites them to do so "[i]f [they] would like." Ex. B to Johnson Decl., ECF No. 39-2.) Plaintiff's advertising letters are unequivocally truthful and non-deceptive.

9

**B. Defendant's cursory assertion that "the contents of these correspondences are complete misrepresentations" is without merit.**

**1. The advertising letter is not a misrepresentation simply because Mr. Greg Wassel and Mr. Robert Leodoro received it.**

Defendant first cites, without authority, that Plaintiff has "no right to solicit [Greg Wassel and Robert Leodoro] for purposes of a lawsuit to which they have no practical connection." (Def. Br. ECF No. 36, at 6.) Defendant has submitted no admissible evidence to prove that these individuals were not employees of Impact. Further, there is a strong 'practical connection' between Mr. Greg Wassel, Mr. Robert Leodoro, and Impact. The list provided to Plaintiff's Counsel by Plaintiff supports a reasonable inference that an entity doing business as "Impact Networking" employed Digital Service Technicians by the names of Greg Wassel and Robert Leodoro in Illinois. (Johnson Decl., ECF No. 39, at ¶ 9; Exhibit A to Johnson Decl., ECF No. 39-1; Krupp Decl., ECF No. 40, at ¶ 2.) As a result, Plaintiff was justified in sending advertising letters to those individuals.[3]

Notwithstanding this, the identity of these recipients has no bearing on the truthfulness of the "contents" of the letter, which clearly represents that Plaintiff's Counsel's <u>understanding</u> is that they were Digital Service Technicians employed by Impact. (Exhibit B to Johnson Decl., ECF No. 39-2.) Plaintiff's Counsel did not state

---

[3] Having just obtained evidence that Impact employs Digital Service Technicians in Wisconsin, Illinois, and Indiana under the same policies and practices but through separate corporate entities, Plaintiff will be moving to amend her complaint in the near future to name Mr. Greg Wassel and Mr. Robert Leodoro's apparent employer – Impact Networking, LLC – as a Defendant as well as Impact Indiana, LLC. (Johnson Decl., ECF No. 39, at ¶ 10.)

that the recipients absolutely worked for Defendant. In addition, the advertising

letters do <u>not</u> represent or guarantee that these individuals necessarily have a

claim or are entitled to any recovery. As such, the letters make no

misrepresentations prohibited by SCR 20:7.3 with respect to Mr. Wassel and Mr.

Leodoro.

Supreme Court precedent further confirms that the constitutional protection

for lawyer advertising does not turn on the "various modes of written advertising to

the general public." *Shapero*, 486 U.S. at 466-67. That is, personalized advertising

letters are protected where they comply with state regulations intended to minimize

mistake. *Id*. at 467, 474-78 ("the First Amendment does not permit a ban on certain

speech merely because it is more efficient…. [M]erely because targeted, direct-mail

solicitation presents lawyers with opportunities for isolated abuses or mistakes does

not justify a total ban on that mode of protected commercial speech…. The State can

regulate such abuses and minimize mistakes through far less restrictive and more

precise means, the most obvious of which is to require the lawyer to file any

solicitation letter with a state agency" and to "require the letter to bear a label

identifying it as an advertisement." (internal citation omitted)). Here, Plaintiff's

Counsel has satisfied both of these requirements as required by the SCR 20:7.3(e).

(Johnson Decl., ECF No. 39, at ¶ 6; Exhibit B to Johnson Decl., ECF No. 39-2.) That

Plaintiff mailed the advertising letter to two individuals, who it believed (and

11

continues to believe)[4] to be employees of Impact and who Defendant has not proved

otherwise, does not constitute a misrepresentation warranting restriction of its

constitutionally protected commercial speech.

>    **2.    The advertising letter did not misrepresent, through
>    omission, information relating to the putative
>    collective action members' rights.**

Defendant complains that the letter omits information typically contained in

a 29 U.S.C. § 216(b) judicial notice, once again purposefully conflating the

distinction between constitutionally protected advertising materials and judicial

notice. (Def. Br., ECF No. 36, at 6-7). For example, Defendant accuses Plaintiff of

omitting the fact that Defendant denies the allegations or that the court has not

certified the class (for which Plaintiff has not even moved)—by citing to cases in

which actual judicial notice was at issue. *See, e.g., Austin v. CUNA Mutual Ins. Soc.*,

232 F.R.D. 601 (W.D. Wis. 2006). However, as discussed above, Plaintiff's

advertising letter is not notice, and these alleged "omissions" are not mandatory in

constitutionally protected commercial advertising for legal services. *See, e.g.,*

*Shapero*, 486 U.S. at 472; *Gulf Oil*, 452 U.S. at 102. Along the same lines, Wisconsin

Supreme Court advertising rules do not require Plaintiff's Counsel to advise

recipients that they may choose other counsel. *See* S.C.R. 20:7.3.

---

[4] Greg Wassell and Robert Leodoro were employed by Impact Networking LLC – an entity
which is not technically a named Defendant at this time, but which employs Digital Service
Technicians in Illinois and set the compensation policies applicable to Digital Service
Technicians employed by Impact Acquisitions, LLC. Defendant failed to disclose to the
Court that Greg Wassell and Robert Leodoro were employed by Impact Networking, LLC, a
related entity to Impact Acquisitions, LLC.

In addition, Plaintiff's advertising letters are not inherently or demonstrably misleading in any manner. The District Court in *Sperling v. Hoffmann-La Roche, Inc.*, considered similar arguments regarding omissions to solicitation letters. *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 407-408 (D.N.J. 1988). With regard to Defendant's chief concern that the letter did not address Defendant's denial of the allegations in the lawsuit, the *Hoffmann-La Roche* court considered a similar argument and stated

> I can think of few suppositions more likely to be entertained by a potential plaintiff on his own than the supposition that the potential defendant might oppose plaintiff's lawsuit. Express notice is hardly necessary. *Sperling v. Hoffmann-La Roche, Inc.*, 118 F.R.D. 392, 409 (D.N.J. 1988).

Plaintiff's advertising letters are also less inflammatory than the solicitation letters at issue in *Hoffman-La Roche. Id.* at 409-10 (discussing potentially "heated phrases" in the solicitation letter including "Black Monday massacre," "war chest," and "Operation Throw 'Em Out"). However, even in light of such inflammatory language, the *Hoffman-La Roche* court refused to invalidate the four hundred consents received in response to the letters, finding that the letters were not flawed in any way that would vitiate the consents. *Id.* at 410. Defendant's remaining concerns with Plaintiff's advertisement letter can be addressed when Plaintiff moves for conditional certification and proposes a notice to be sent to putative collective action members.

Because these letters are truthful and conspicuously labeled as advertisements, they are protected speech under the First Amendment of the

Constitution and no restraint on Plaintiff's speech is warranted. Defendant's concerns regarding the content of any notice can be addressed at conditional certification. *See Hoffman-La Roche* at 171, n. 2.

### III. The "conditional certification" cases cited by Defendant are inapposite and do not support its motion to restrict constitutionally protected free speech and sanction Plaintiffs' counsel.

Defendant cites to a slew of cases which do not involve constitutionally protected advertising letters, but rather judicial notice after a plaintiff moves for conditional certification of a collective action. The import of these cases again relies on Defendant's mischaracterization of Plaintiff's advertising letter as "notice."

First, Defendant uses cases at the conditional certification stage to assert that Plaintiff violated a requirement to have Defendant approve its standard pre-conditional certification advertising letter. (Def. Br., ECF No. 36, at 3-4). The dicta relied upon by Defendant in *Woods v. New York Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) stands for the proposition that it may be improper plaintiff to issue notice and consent forms "without first communicating to the defendant's counsel his intention to do so, so that the defendant's counsel would have an opportunity to verify the accuracy of the notice and, if he wished, to move for an order amending the notice or limiting its distribution in an appropriate manner." *Id.* (emphasis added). However, as established above, Supreme Court precedent has since

14

undermined the dicta of the *Woods* court on First Amendment grounds.[5] *See Hoffmann-La Roche*, 493 U.S. 165 at 171 n.2 (*citing Shapero*, 486 U.S. at 472).

Indeed, *Woods* itself recognized that the FLSA "of its own force may preempt state laws that operate to prevent the representative plaintiff or his counsel from communicating with other (actual or potential) class members; **such laws could even raise First Amendment problems**... **But we need not decide these questions in this case**." 686 F.2d at 581 (citing *Bates*, 433 U.S. at 375-76) (emphasis added). Thus, *Woods* did not address the question here: can the Court prohibit Plaintiff from truthfully communicating with potential class members via conspicuously marked advertising material protected by the First Amendment? According to *Shapero*, the answer is no. *Shapero* at 472.

Second, Defendant relies on conditional certification case law to require Plaintiff to meet the conditional certification "similarly situated" standard prior to sending an advertising letter. (Def. Br., ECF No. 36, at 5). This standard applies to motions for conditional certification under 29 U.S.C. § 216(b) and is inapplicable to attorney advertising. In this vein, *Austin* and *Sjoblom v. Charter Communications,*

---

[5] For the same reason, *Heitmann v. City of Chicago,* 2004 WL 1718420 (N.D. Ill, Jul. 30, 2004) is unpersuasive. Defendant is correct that *Heitmann* followed *Woods* to the extent that it required Plaintiff to notify Defendant of a distribution of <u>notice</u>, but it does not require plaintiffs to seek defendant's approval of an advertising letter protected by the First Amendment. The Court also sympathized with the Plaintiff in *Heitmann*, finding "Plaintiff's ignorance of this requirement [to inform Defendant of its intent to distribute notice] somewhat understandable as the Seventh Circuit, in *Woods*, could not 'find any express basis in rule or statute' for the required of providing notice; instead the requirement is 'inferred' from the statute and Rule 83 of the [FRCP], which permits courts to regulate their own practice consistent with the other federal rules." Moreover, the *Woods* requirement is dicta and has not been adopted in any other circuit.

*Inc.*, 2007 WL 4560541, *7 (W.D. Wis., Dec. 19, 2007) are not applicable to this matter at this time because they hold that "the critical inquiry in determining whether a court should…authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." Not only does this standard not apply to the recipients of Plaintiff's advertising letter, but it confirms that Plaintiff's letter is distinct from judicial notice. *See Hoffman-La Roche*, 493 U.S. at 171 (approving sending court-authorized notice to putative class members <u>after</u> plaintiffs had mailed mass advertising letters).

Defendant's assertion of the similarly situated standard here wrongly condemns Plaintiff to the "chicken-and-egg limbo in which the class could only notify all its members to gather together after it had gathered together all its members." *See Hoffmann-La Roche, Inc.*, 118 F.R.D. at 406. In other words, Plaintiff cannot satisfy similarly situated standard when she moves for conditional certification without first communicating with potential class members—the precise activity Defendant attempts to ban her from doing. Any motion for preliminary certification is a signed pleading, and thus Plaintiffs' counsel has a Rule 11 obligation to conduct a reasonable inquiry to support a contention that a similarly situated class of plaintiffs in fact exists. *See* Fed. R. Civ. P 11(b), (b)(3). *See Stanfield v. First NLC Fin. Servs.*, 2006 WL 6582196 (N.D. Cal., Oct. 30, 2006) ("Plaintiffs' counsel in the case at bar have successfully demonstrated that in order to fulfill their job and serve their clients they must 'spread the word' about the

16

potential class action prior to the statute of limitations running"); *Williams v. Balcor Pension Investors*, 150 F.R.D. 109, 119 (N.D. Ill. 1993) ("If we recognize that counsel have a lot to do with assembling the elements of a class action lawsuit, including finding named plaintiffs, then class counsel ought to do a good job of it.") Plaintiff's Counsel simply cannot fulfill its Rule 11 obligations in regard to signing a future motion for conditional class certification without first investigating the claims of potential collective action members, and others who may be similarly situated, and without making a diligent effort to determine the size of and makeup of the class. These obligations compel Plaintiff's Counsel to contact potential class members by non-intrusive means: namely, advertising letters providing accurate information about the case, so that potential class members who believe they may have a claim will know to contact counsel. By seeking to prevent such communication, Defendant paves the way for its inevitable argument that the class should not be certified because Plaintiffs have failed to obtain enough consent forms. On the basis of Rule 11's requirement that Plaintiff conduct a "reasonable inquiry" into the existence of similarly situated class members, the Court should deny Defendant's motion.

## IV. Defendant's requested relief is unwarranted, unconstitutional, and unnecessary.

Based on its erroneous complaint that the "notice process" (which has not yet occurred) was "not fair to Defendant," Defendant asks the court to strike Plaintiff's consent forms, order that Plaintiff have no further contact with absent class members without Defendant's involvement, permit Defendant to send notice to

17

putative collective action members, and to sanction Plaintiff and her counsel. Defendant's requested relief is unwarranted given that Plaintiff's advertising letters are truthful, constitutionally protected speech.

First, the cases cited by Defendant in ostensible support for striking consent forms are inapposite, as they involve misleading information and objectively deficient consent forms. *See Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1089 (S.D. Iowa 2007) (ordering plaintiffs to modify misleading website that gave "the impression that Defendant's liability is already settled"); *see also Tate v. Showboat Marina Casino P'ship*, 2002 WL 31253843 (N.D. Ill. Oct. 8, 2002) (striking plaintiffs who did not file individual, signed consent forms as required by the FLSA).[6] Plaintiff's advertising letter cannot reasonably be read to mislead the recipients to believe that Defendant's liability is already settled. Nor did Plaintiff's advertising letter result in a consent form that was deficient as was the case in *Tate*. Moreover, striking the consent forms does nothing but harm the individuals who opted into this matter as their statute of limitations would begin to run again.

Second, an order limiting communications to members of a putative class must be based on a "clear record and specific findings that reflect the weighing of a need for limitation and the potential interference with the rights of the parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1989). In FLSA cases, Courts generally

---

[6] As Defendant indicates in it citation to *Harkins v. Riverboat Servs., Inc.*, No. 99 C 123, 2002 WL 32406581, at *6 (N.D. Ill. May 17, 2002) aff'd, 385 F.3d 1099 (7th Cir. 2004), the district court struck consent forms which were untimely as they were filed months after discovery closed. This case had nothing to do with striking consent forms that resulted from an advertising letter.

"have taken a similar approach to that outlined in *Gulf Oil*: relying upon their broad case management discretion to generally allow pre-notice communications while actively limiting misleading statements in such communications." *Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338, 1342-43 (N.D. Ga. 2007) (holding that it would be an abuse of discretion to totally proscribe plaintiffs from communicating with potential class members through a website or other means prior to conditional certification).[7] As detailed above, and contrary to Defendant's claims, Plaintiff's advertising letter is in no way misleading. Defendant has failed to identify any evidence that would warrant a need for limiting Plaintiff's communication with putative class members. Even with this dearth of support, Defendant fails to request a "carefully drawn order that limits speech as little as possible, consistent with the rights of the parties under the circumstances." *Gulf Oil*, 452 U.S. at 101. Rather, it moves the Court for an unwarranted and outright

---

[7] *See, e.g., Frye v. Baptist Memorial Hospital, Inc.*, 2008 WL 2117264, at *5 (W.D. Tenn. May 20, 2008) (denying defendant's motion requesting that plaintiffs' counsel cease and desist sending communications to putative collective action members even though plaintiffs' counsel admittedly failed to follow the Tennessee advertisement rules and provided inaccurate information on website); *Piper v. RGIS Inventory Specialists, Inc.*, 2007 WL 1690887, at *8 (N.D. Cal. June 11, 2007) (holding that the plaintiffs' inaccurate website needed to be updated but did not justify other limitations on communications with putative collective action members); Rubery, 514 F. Supp. 2d at 431 ("it is well settled that attorney advertisements such as the Letter Notice [sent by plaintiffs' counsel to putative collective action members] are protected by the First Amendment, so long as they are 'not false or deceptive and [do] not concern unlawful activities'"); *Kalish, et al. v. High Tech Inst.*, 2005 WL 1073645, at *4 (finding that the advertisement letters sent by plaintiffs' counsel to potential collective action members were permissible and were not "notice"); *Parris v. The Superior Court of Los Angeles and Lowe's H.I.W., Inc.*, 190 Cal. App. 4th 285, 290 (Cal. App. Ct. 2003) ("pre-certification communication with potential class members, like pre-filing communication, is constitutionally protected free speech" and a "blanket requirement of judicial approval for such communications would constitute impermissible restraint on speech").

complete restriction on constitutionally protected commercial speech running afoul of Supreme Court precedent.

Third, Defendant requests the opportunity to send its own communication to the putative collective action members, or if conditional certification is granted, send curative notice. However, the information Defendant argues is lacking from Plaintiff's advertising letter would be included in a notice upon a showing at conditional certification that the putative collective action members are similarly situated. Similarly, a curative notice is not necessary as the information Defendant would like included can be included in the notice – to the extent it is appropriate.

Finally, even if the Court does find a deficiency in Plaintiff's advertising letter, Defendant's requested relief (including limiting communications between Plaintiff's Counsel and potential class members, striking consents, and awarding attorneys' fees) are excessively harsh and unwarranted. Even where plaintiffs actually sent out misleading notices and failed to "seek defendant's input before sending out class notices" as in *Woods*, the Western District of Wisconsin declined to order sanctions beyond curative notice and new consents. *Spoerle v. Kraft Foods Glob., Inc.*, 253 F.R.D. 434, 443 (W.D. Wis. 2008). The court declared "Defendant's suggestion that plaintiffs' counsel be barred from having unsupervised contact with the class" to be "overzealous advocacy," and noted that Defendant "pointed to no decisions in which a court has taken the extreme step of barring communication under similar circumstances." The *Spoerle* court further found that Defendant's request for attorney fees went "further than necessary." *Id.*

20

## CONCLUSION

For all of these reasons, Defendant's requested motion to strike, for restrictions on Plaintiff's First Amendment rights to communicate with potential collective action members, and for sanctions are unwarranted. Although Defendant may prefer its employees remain in the dark about this lawsuit, Plaintiff was well within her First Amendment Rights to send advertising letters in this matter. Furthermore, because the letter is honest, truthful, and informative, it does not warrant interfering with Plaintiff's right to engage in ethical written solicitation of potential class members or penalizing putative class members by striking any consent form filed as a result of these advertising letters. The Court should reject Defendants' objections to the letters and consent forms, and Defendant's motion to restrain Plaintiff's protected speech should be denied.

Dated this 19th day of February, 2016.

**HAWKS QUINDEL, S.C.**

By:    **s/ LARRY A. JOHNSON**

Larry A. Johnson, SBN 1056619
ljohnson@hq-law.com
Timothy P. Maynard, SBN 1080953
tmaynard@hq-law.com
Summer H. Murshid, SBN 1075404
smurshid@hq-law.com

Hawks Quindel, S.C.
PO Box 442
Milwaukee, WI 53201-0442
Telephone: (414) 271-8650
Facsimile: (414) 271-8442
Attorneys for the Plaintiffs

21