UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

LINDA KRUPP,
individually and on behalf of all
others similarly situated,

    Plaintiff,

 -vs-                                          Case No. 14-C-950-PP

IMPACT ACQUISITIONS LLC,
IMPACT NETWORKING INDIANA, LLC, and
IMPACT NETWORKING LLC

    Defendants,

**ORDER GRANTING PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION AND COURT-AUTHORIZED NOTICE (DKT. NO. 42); DENYING AS MOOT DEFENDANTS' MOTION FOR PROTECTIVE ORDER (DKT. NO 63); DENYING AS MOOT PLAINTIFF'S AMENDED MOTION FOR LEAVE TO FILE A SUR-REPLY BRIEF (DKT. NO 69); AND SCHEDULING HEARING ON DEFENDANTS' MOTION TO STRIKE, FOR PROTECTIVE ORDER, AND FOR SANCTIONS (DKT. NO. 35)**

## Introduction

      The plaintiff, Linda Krupp, brings this putative collective and class action on behalf of herself and current and former digital service technicians (DSTs) who were employed and classified as salaried non-exempt by the defendants, but were not compensated at one and one-half times their rate of pay when they worked over 40 hours. She alleges that the defendants failed to pay overtime wages, which violated the Fair Labor Standards Act (FSLA), 29 U.S.C. §§201-219, and its Wisconsin counterparts, Wis. Stat. §§103.02 and 109.03, and Wis. Admin. Code §DWD 274.03. Dkt. No. 1. The court has federal

1

question jurisdiction over the FLSA claims and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §§1331 and 1367, respectively.

The following motions are ready for resolution: (1) the defendants' motion to strike, for protective order, and for sanctions (Dkt. No. 35); (2) the plaintiff's motion for conditional collective action certification (Dkt. No. 42); (2) the defendants' motion for a protective order quashing or staying the deposition of Patrick Roth (Dkt. No. 63); and (3) the plaintiff's amended motion for leave to file a sur-reply brief (Dkt. No. 69).

I. **<u>Motion for Conditional Class Certification and Court-Authorized Notice (Dkt. No. 42)</u>**

Pursuant to 29 U.S.C. §216(b), the plaintiff seeks conditional certification of the collective overtime class of all persons employed as salaried non-exempt DSTs by any defendant at any time since March 22, 2013. She also requests (1) appointment of her counsel as collective action counsel; (2) approval of the proposed notice of right to join lawsuit;[1] and (3) an order directing the defendants to disclose identifying information regarding any persons of whom they are aware who meet the collective class definition.

---

[1] The plaintiff filed a proposed notice with a 75-day opt-in period and sought disclosures, including the telephone numbers of DSTs who meet the collective action definition. Dkt. No. 42 at 2. In her reply brief, however, she agrees to a 45-day opt-in period, and agrees to forgo disclosure of phone numbers. Dkt. No. 62 at 20.

2

# Factual Background[2]

The defendants operate digital office equipment service and repair businesses in Wisconsin, Indiana, and Illinois. Dkt. Nos. 45-1 at 9, 18; 45-2 at 19. The defendants are separate legal entities, but they share upper management (including a chief executive officer who approves all salaries), they have related ownership, and they operate under the same "Impact Networking" brand. Dkt. No. 45-2, 8, 13, 16. Impact Acquisitions LLC's ("Acquisitions") vice president of operations, who works primarily out of Impact Networking LLC's ("Impact") Illinois office and occasionally out of Acquisitions' Brookfield office, processes the defendants' entire payroll, including for DSTs. Dkt. No. 45-2, 6-7. Impact's Lake Forest, Illinois office handles the defendants' human resources and sets the policies and procedures that apply to all DSTs. Dkt. Nos. 45-1, 38, 230-31; 45-2, 17.

The defendants have employed DSTs since June 2012, and the job description is the same for all of them: to "[p]rovide onsite customer service, field repair, and maintenance of digital office equipment at [Impact's] customers' facilities." Dkt. Nos. 45-1, 28; 45-3, 1. Acquisitions employs DSTs who work in Wisconsin. Impact LLC employs DSTs who work in Illinois, and Impact Networking Indiana, LLC ("Impact Indiana") employs DSTs who work in Indiana. Id. at 9-10.

---

[2] The facts are based on the uncontested factual allegations of the amended complaint and answers thereto and the factual materials filed in conjunction with the plaintiff's motion for conditional certification.

3

The plaintiff resides in Racine, Wisconsin, and Acquisitions employed her from about June 2012 until June 2014. Dkt. No. 43. Wendell Walton, who has opted into this action, resides in Marion County, Indiana, and worked as a DST for Impact Indiana from about February 2014 through April 2014. At that time, Impact Indiana terminated his employment because he had not completed enough on-line training certifications. Dkt. No. 44.

The defendants have an Employee Handbook,[3] and all DSTs must sign an acknowledgement that they have received a copy and understand the policies they contain. Dkt. No. 41-1, 37. Those policies set forth work requirements, and apply in the same manner to all DSTs. Id. at 35-36. Pursuant to the Handbook, the workweek starts on Monday and ends on Friday, and each workday begins at 8 a.m. and ends at 5 p.m. The workday includes an unpaid hour for lunch, which an employee generally may schedule between 11 a.m. and 1 p.m. Dkt. No. 45-9, Bates Nos. 000346-47.

The Handbook also states that a manager can notify an employee that overtime work may be required. Id. at Bates No. 000346. In order for an employee to receive overtime pay, the employee's manager must authorize the overtime work in advance. Id. at Bates No. 000344. The defendants do not have a formal mechanism or procedure for DSTs to report working overtime or through meal periods. Dkt. Nos. 45-1, 232; 45-2, 75.

---

[3] The plaintiff filed six versions of the Handbook that, according to the defendants, have been in effect at various times since 2011. Dkt. Nos. 45-4 through 45-9. The court has reviewed the relevant parts of these Handbooks and has determined that they are substantially similar, or the same. The court only cites the provisions of the most recent version, Dkt. No. 45-9.

4

All DSTs are paid on a semi-monthly basis. Dkt. No. 45-2, 21. With the exception of a few hourly DSTs employed by a company acquired in 2015 who continue to be paid on an hourly basis,[4] DSTs have been classified as "salar[ied]" "non-exempt" employees since 2012. Dkt. No. 45-1, 115-16.

The defendants categorize DSTs as "non-exempt" for purposes of overtime compensation under the FLSA, and are aware that DSTs are entitled to overtime compensation when they work more than forty hours in a workweek. Dkt. Nos. 45-1, 116; 45-2, 23-24.

When processing payroll, the defendants do not determine each DST's actual start and/or end time each workday, the actual start and/or end time of a meal period each workday, or the actual number of hours and minutes that each DST worked each workday or workweek within the payroll period. Dkt. No. 45-2, 86. Instead, the defendants assume that the DSTs work the regular work hours outlined in the Employee Handbook — Monday through Friday from 8 a.m. to 5 p.m. minus a one-hour lunch each workday, Dkt. No. 45-2, 68 — and their salaries compensate them for a forty-hour workweek, Dkt. Nos. 45-1, 39, 120; 45-2, 31. Each DST's salary is divided evenly between the twenty-four pay periods per year. Dkt. No. 45-2, 28. Overtime is added when a manager calls or otherwise notifies payroll that the DST has worked overtime.

---

[4] The plaintiff's proposed collective action and class definition excludes these employees. She does not anticipate that excluding them will create issues with respect to providing notice to the FLSA collective class, because the defendants have stated that they can identify hourly and salaried DSTs. Dkt. No. 45-2, 27. The parties do not address why Walton, who was a DST in 2014, was paid an hourly wage rather than a salary. Dkt. No. 44, ¶6.

5

The defendants' payroll software has the ability to track start and end times for each DST each workday. Dkt. No. 45-2, 87-88. The defendants once attempted to use the software to require DSTs to punch in and out at the start and end of their respective shifts. Since 2012, they have not done so for payroll purposes. Dkt. No. 45-2, 36-37, 73.

The defendants use a merit review system to set goals and areas of improvement for each DST. Dkt. No. 45-1, 41-42. DSTs are awarded a number of points based on performance in four categories: (1) training, (2) activity, (3) performance, and (4) manager evaluation. Dkt. Nos. 45-1, 43; 45-10, Bates No. 000528. DSTs who fall below a certain percentage of points on their review may be subject to termination. Dkt. Nos. 45-1, 47-50; 45-10, Bates No. 000528 (DSTs falling within a 0-24% range of possible points need to *"[p]erform or [p]erish"* (emphasis added).)

With respect to training, the defendants expect DSTs to complete online and classroom training sessions on the equipment that they repair and service. Dkt. No. 45-1, 53-59. The defendants set benchmarks — including a certain number of trainings to be completed within ninety days of being hired. Id.; Dkt. No. 45-10, Bates No. 000529. The training is designed to make DSTs more efficient servicing the machines on which they work, more effective at providing service to the defendants' customers, and more efficient in performing their jobs. Dkt. No. 45-1, 58.

With respect to activity, the defendants set benchmarks for DSTs regarding the percentage of time spent on different activities during the day,

6

the average number of service calls handled in a day, and the average time spent responding to customer calls. Dkt. No. 45-10, Bates No. 000530. At a minimum, DSTs are expected to spend more than 70% of their work time as "productive: customer time & travel," which "consists of time dispatched or arrived to a customer site." Id. DSTs are expected to complete a minimum of four customer calls per day, arrive at their first call no later than 8:10 a.m., and leave the last call no earlier than 4:35 p.m. Id.

Because of the defendants' common policies and practices, since 2012 DSTs have worked more than forty hours in a workweek without receiving compensation for all hours worked in excess of 40. Dkt. Nos. 45-12, 44-45; 43, ¶10; 44, ¶10.

All DSTs are scheduled for a forty-five-hour workweek, but because of the defendants' assumption that a one-hour unpaid meal period occurs each workday, only forty hours are compensated. Dkt. Nos. 45-2, 68; 43, ¶4; 44, ¶5. DSTs have been allowed to work through meal periods, and thus have worked overtime hours without receiving overtime pay. Dkt. Nos. 45-2, 68; 43, ¶5; 44, ¶5. The defendants were aware of the probability that DSTs worked through all or a portion of their meal periods. Dkt. Nos. 45-1, 125; 45-12, 45; 43, ¶8. The defendants do not require DSTs to take a one-hour meal period, nor do they have a formal mechanism or policy by which DSTs can report working through a meal period and thus be paid overtime.

DSTs also have worked in excess of forty hours per workweek by completing required online training outside of the defendants' normal work

7

hours. Dkt. Nos. 45-12, 66-70, 74, 84; 43, ¶¶9-10; 44, ¶¶9-10. The defendants were aware that such training occurred outside of regular work hours. Compare Dkt. Nos. 45-1, 100-101 (stating that the defendants receive reports showing the dates that trainings are completed) 45-11, Bates Nos. LK000085-86 (showing that the plaintiff completed training sessions for Apple Mac Printing Basics, Scanner Image Processing Systems, The Internet, and Windows 2000/XP Printing Basics on Saturday, May 31, 2014); see also Dkt. Nos. 45-1, 103-04 (acknowledging that manager John Summer held a training session for DSTs outside of regular hours ); 45-12, 51-52, 72-73; 43, ¶9. However, the defendants did not instruct DSTs about how they should track, and therefore be paid for, the time they spent engaging in online training outside of regular business hours. Dkt. Nos. 45-1, 132; 43, ¶9; 44, ¶9. Consequently, DSTs were not aware of any procedure that would allow them to be paid for those training hours, and they did not receive overtime compensation when they worked in excess of a 40-hour workweek in order to complete required training. Dkt. Nos. 43, ¶¶9-10; 44, ¶¶9-10.

DSTs also occasionally performed service calls for customers before or after their scheduled work hours. Dkt. Nos. 45-12, 40-41; 43, ¶7; 44, ¶7. The defendants require DSTs to use their phones to accurately record work time via a software program called e-Automate. Dkt. Nos. 45-2, 105-07; 45-1, 120; 43, ¶7; 44, ¶7. However, the defendants do not use those e-Automate records for payroll, they instead assume that DSTs work a 40-hour workweek. Dkt. No. 45-2, 68; 45-1, 120; 43, ¶5; 44, ¶5.

## Analysis

Under the FLSA, "employees are entitled to overtime pay (i.e., one and one-half times the regular rate) for any hours worked in excess of forty hours per week, unless they come within one of the various exemptions set forth in the Act." Schaefer-LaRose v. Eli Lilly & Co., 679 F.3d 560, 572 (7th Cir. 2012) (citing 29 U.S.C. §§207, 213). To assert such claims, the FLSA "gives employees the right to bring their FLSA claims through a 'collective action' on behalf of themselves and other 'similarly situated' employees." Alvarez v. City of Chi., 605 F.3d 445, 448 (7th Cir. 2010) (citing 29 U.S.C. §216(b)).

Employees or former employees must give their consent in writing to become a party to a collective action brought pursuant to §216(b). Unlike a typical class action suit under Fed. R. Civ. P. 23, where an unwilling plaintiff must "opt out" of the class, the FLSA requires employees or former employees to "opt in" to the class. Woods v. N.Y. Life Ins. Co., 686 F.2d 578, 579-80 (7th Cir. 1982). [T]he "sole consequence of conditional certification [under §216] is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court." Tyson Foods, Inc. v. Bouaphakeo, 136 S.Ct. 1036, 1043 (2016) (Citation omitted).

In their discretion, district courts may facilitate notice to potential plaintiffs to a FLSA collective action to implement this "opt in" procedure. DeKeyser v. Thyssenkrupp Waupaca, Inc., No. 08-C-488, 2008 WL 5263750, *2 (E.D. Wis. Dec. 18, 2008); see Hoffmann-LaRoche, Inc. v. Sperling, 493 U.S.

9

165, 169 (1989); Woods, 686 F.2d at 580. "The critical inquiry in determining whether a court should exercise its discretion to authorize the sending of notice to potential plaintiffs is whether the representative plaintiff has shown that she is similarly situated to the potential class plaintiffs." Austin v. CUNA Mut. Ins. Soc., 232 F.R.D. 601, 605 (W.D. Wis. 2006). Neither the FLSA, the Supreme Court, nor the Seventh Circuit has provided guidance on how the court is to determine whether the representative plaintiff is 'similarly situated' to the potential plaintiffs. Adair v. Wis. Bell, Inc., No. 08-cv-280, 2008 WL 4224360, at *3 (E.D. Wis. Sept. 11, 2008). Courts in the Seventh Circuit have adopted a two-step certification approach. Id.

First, the court must determine whether to conditionally certify the class by examining whether the plaintiff has demonstrated a "reasonable basis" for believing that she is similarly situated to potential class members. Id. At the first stage, the plaintiff must make "at least a modest factual showing that such collective action is appropriate." Id. at *4. See also, e.g., Brabazon v. Aurora Health Care, Inc., No. 10-CV-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011); Nicholson v. UTi Worldwide, Inc., No. 3:09-cv-722-JPG-DGW, 2011 WL 250563, at *2 (S.D. Ill. Jan. 26, 2011); Howard v. Securitas Security Servs., USA Inc., No. 08 C 2746, 2009 WL 140126, at *5 (N.D. Ill. Jan 20, 2009); Austin, 232 F.R.D. at 605.

Plaintiffs may present factual support in the form of affidavits, declarations, deposition testimony, or other documents in order to demonstrate some "factual nexus between the plaintiff[s] and the proposed class or a

10

common policy that affects all the collective members." Nehmelman v. Penn Nat'l Gaming, Inc., 822 F. Supp. 2d 745, 750 (N.D. Ill. 2011). In making a determination as to similarity, the court need not accept the plaintiffs' allegations as true, as it would with a motion to dismiss. "Rather, the court evaluates the record before it, including the defendants['] oppositional affidavits, to determine whether the plaintiffs are similarly situated to other putative class members." Id. at 751 (citations omitted) At the time, the court does not consider the merits of the plaintiffs' claims, or witness credibility. Id.

It is a lenient standard, but the conditional certification stage is not a "mere formality." Adair, 2008 WL 4224360, at *3. This is because "a plaintiff's discovery demands upon conditional certification may impose 'a tremendous financial burden to the employer'" and courts must be careful to guard against wasting the parties' time and resources where certification is not appropriate at the outset. Id. at *4 (quoting Woods, 686 F.2d at 581). If the class is conditionally certified, notice may be sent to other potential class members and discovery may proceed. Adair, 2008 WL 4224360, at *3. At step two--typically on a defendant's motion for decertification--the court must determine whether plaintiffs who have opted in are similarly situated. Id.; Brabazon, 2011 WL 1131097, at *2. At the second stage, the court will assess whether continuing as a collective action will provide efficient resolution in one proceeding of common issues of law and fact. Hoffmann-La Roche, 493 U.S. at 170.

The defendants assert that the plaintiff cannot establish (1) that she is similarly situated to the putative collective action members, (2) that they were

11

victims of a common unlawful policy, and (3) that it would promote judicial economy to have all putative members' FLSA claims adjudicated in the same proceeding. Dkt. No. 55 at 8. They also contend that the putative class members' claims require individualized analysis of pre- and post-work activities, as well as lunch period activities, making collective action adjudication unfeasible. Id.

The defendants dispute Krupp and Walton's representations. They assert that DSTs were required to take a meal hour and that training was not required. Contrary to the Handbook's prior approval requirement, the defendants state that overtime could be compensated if a manager later approved it. They also state that overtime could be reported to a manager in-person, by email, or over the phone.

Although there are contested factual issues, the court does not make credibility determinations or resolve factual disputes at the conditional approval stage. At this stage, the court must determine whether the plaintiff has shown that she can represent similarly situated DSTs and whether she has shown that a policy existed. The answer to both questions is yes.

Krupp has established that similarly situated DSTs exist. Regardless of which defendant hired and employed them, all DSTs had the same job description and were subject to the same Handbook and the same performance review system. Although some DSTs were paid on an hourly basis (including opt-in plaintiff Walton), those individuals can be separated from salaried DSTs,

12

and are excluded from the collective action definition. Krupp has established that she was similarly situated to the other potential collective action members.

The Krupp and Walton declarations establish that DSTs worked from 8 a.m. to 5 p.m., with a one-hour meal period automatically deducted from compensable work hours. They also establish that both Krupp and Walton often worked during the allotted meal period as well as before and/or after scheduled work hours, and that neither was paid for all hours worked as a DST. Each declares that although the defendants required them to use the e-Automate program to track the arrival and departure times on calls to which they were dispatched, they were not provided with a means to track work hours. Krupp states that, on average, she was not able to take a meal period once or twice per workweek, and when she did take one, she often worked through a portion it. Walton states that he often worked through his meal period, and on average took only thirty-five to forty minutes to eat. The plaintiff has established that the defendants had a policy of assuming that each DST started work at 8 a.m., took a meal hour, and ended the workday at 5 p.m. She has made a sufficient factual showing that the defendants did not provide any formal mechanism to enable DSTs to report additional hours worked so they could be compensated when the workweek exceeded forty hours.

Krupp and Walton both aver that DSTs were required to perform training on the equipment sold and serviced by the defendants. They state that service calls kept them too busy to participate in the training during scheduled work hours, and that they were not informed that they should keep track of the

13

hours spent training or that they should not do training outside of scheduled work hours. Krupp states that she usually did training at night, spending one to seven hours per session. She informed her manager that she was engaged in training outside of scheduled work hours, and that he did not take any steps to ensure that she would be compensated for that training. Walton states that he spent an average of two to three hours per night in training, and that his manager often inquired about the status of training sessions and why Walton had not completed them.

  The evidence regarding a common policy of having DSTs work at customer service calls before and after regularly scheduled work hours is hazy — the activity benchmark may have created an implicit policy. Regardless, the plaintiff has established that the defendants had a common policy with respect to DSTs working without compensation for unpaid meal periods and engaging in required training outside of regular business hours. For these reasons, the court will grant conditional collective action certification.

  With respect to the additional relief the plaintiff requests, the court appoints the plaintiff's attorney as collective action counsel and approves the plaintiff's proposed notice with the agreed modification of a forty-five-day deadline from the mailing of the notice for potential collective action members to opt-in. The plaintiff has agreed to forego her request for the telephone numbers of potential collective action members. It appears that the remainder of her requests--that within ten days of this order the defendants provide her with an Excel spreadsheet containing the first and last names of those

14

Case 2:14-cv-00950-PP   Filed 12/12/16   Page 14 of 18   Document 74

potential collective action member, their last known addresses (including municipality, state, and zip code), their employment dates, their birth dates, and the last four digits of their Social Security numbers--are uncontested. Those requests are reasonable, and the court will grant the plaintiff's request for disclosure.

II. **<u>Defendant's Motion for a Protective Order</u>**

The defendants sought a protective order quashing or staying the deposition of Patrick Roth until the court could resolve the conditional certification motion. Dkt. No. 63. They explicitly stated, however, that they agree to Roth's deposition if court certifies the collective action. The court has conditionally certified the collective action, so the court will deny as moot the defendants' motion to quash or stay.

III. **<u>Plaintiff's Amended Motion for Leave to File a Sur-Reply Brief</u>**

The defendants filed the above motion for a protective order on June 27, 2016. Dkt. No. 63. The plaintiffs filed an opposition brief on July 15, 2016, dkt. no. 65, and the defendants filed a reply on July 27, 2016, dkt. no. 66. On August 2, 2016, plaintiff Krupp asked leave to file a sur-reply brief, arguing that the defendants had raised issues in their reply that they'd not raised in their original motion. Dkt. No. 67. They amended that request on August 3, 2016. Dkt. No. 69. Because the court now has certified the collective action, this motion is moot.

IV. **<u>Defendants' Motion to Strike, For Protective Order, and For Sanctions (Dkt. No. 35)</u>**

On January 29, 2016—before the plaintiff had filed its motion to certify the class—the defendants filed this motion, alleging that the plaintiffs had sent out unauthorized and unapproved class solicitation letters, and had sent them to individuals who couldn't be class members (because they hadn't worked for the defendants). Dkt. No. 36 at 1. The motion asked the court to strike the plaintiff's consent forms, authorize the defendants to send their own correspondence, authorize curative notices if the court granted conditional certification, and bar the plaintiff from any unsupervised contacts with "absent class members." Id. at 11. The motion also asked that the court sanction the plaintiffs by requiring them reimburse the defendants for the costs and fees of bringing the motion. Id.

The plaintiffs responded adamantly, arguing that they'd sent out "advertising letters," which did not constitute notice and were constitutionally protected commercial speech. Dkt. No. 38 at 1. The defendants did not file a reply.

The court now has conditionally certified the class. Given this change in circumstances, the court wishes to hear from the parties on those parts of the motion that are not resolved by this order.

## **<u>Conclusion</u>**

The court **ORDERS** that the plaintiff's motion for conditional collective action certification (Dkt. No. 42) is **GRANTED**;

16

The court **APPOINTS** the firm of Hawks, Quindel, S.C. as collective action counsel;

The court **APPROVES** the proposed notice of right to join lawsuit as modified by a forty-five-day opt-in period;

The court **ORDERS** that within ten days of the date of this order, the defendants shall provide the plaintiff with an Excel spreadsheet listing the following information about any persons whom they believe meet the collective class definition: first and last names, last known addresses (including municipality, state, and zip code), employment dates, birthdates and the last four digits of Social Security numbers;

The court **ORDERS** that the defendants' motion for a protective order (Dkt. No. 63) is **DENIED** as moot;

The court **ORDERS** that the plaintiff's amended motion for leave to file a sur-reply (Dkt No. 69) is **DENIED** as moot;

As discussed at the October 3, 2016 status conference, the court **ORDERS** that within ten days of the date of this order, the parties shall file with the court a revised scheduling plan, proposing new dates for the close of discovery and for filing dispositive motions. If the parties are unable to reach an agreement with regard to those dates, they may each submit their proposed dates in separate plans.

Finally, the court **ORDERS** that the parties shall appear on January 3, 2017 at 2:30 p.m. for a hearing on the motion to strike/motion for sanctions.

Dkt. No. 35. Parties wishing to appear by phone may do so by calling the court's conference line at 888-557-8511 and using the access code 4893665#.

Dated in Milwaukee, Wisconsin this 12th day of December, 2016.

BY THE COURT:

HON. PAMELA PEPPER
United States District Judge